UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL TOVAR,

       Petitioner,

v.                          Case No: 2:13-cv-15-FtM-29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Michael Tovar ("Petitioner") who is presently confined at the South Bay Correctional Facility in South Bay, Florida (Doc. 1, filed January 9, 2013). Petitioner, proceeding *pro se*, attacks a conviction entered by the Circuit Court in Lee County, Florida for capital sexual battery. Id. Respondent filed a response and a supplemental response to the petition (Doc. 12; Doc. 17). Petitioner filed a reply and a supplemental reply (Doc. 14; Doc. 22).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Upon due consideration of the pleadings and the state-court record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On January 7, 2008, Petitioner was charged with two counts of capital sexual battery on a child less than twelve years of age in violation of Florida Statute § 794.011(2) (Ex. 1).[2]  On April 28, 2009, Petitioner pleaded no contest to one count of capital sexual battery and was sentenced to life in prison (Ex. 2). The other count was *nolle prossed* by the state.

After he was sentenced, Petitioner filed a *pro se* motion to withdraw his plea (Ex. 3 at 1).  Thereafter, on May 5, 2009, counsel filed a motion to withdraw the guilty plea (Ex. 3 at 2) which the trial court struck as facially insufficient (Ex. 3 at 3).  Petitioner was given thirty days to amend the motion to withdraw his plea, but no amended motion to withdraw was filed.

---

[2] Citations to exhibits are to those filed by Respondent on July 16, 2013 (Doc. 13).

Petitioner did not timely file a direct appeal, but filed a motion for a belated appeal on December 21, 2009 (Ex. 4).  The motion was granted, and Petitioner was informed that the appellate court would consider the appointment of appellate counsel provided Petitioner request such and file a financial certificate within ten days (Ex. 6); Tovar v. State, 36 So. 3d 102 (Fla. 2d DCA 2010). Petitioner filed a *pro se* notice of appeal regarding his judgment and sentence on May 20, 2010 (Ex. 6).  On July 15, 2010, Florida's Second District Court of Appeal dismissed the appeal because of Petitioner's failure to remit the filing fee or order of insolvency from the lower tribunal (Ex. 7); Tovar v. State, 39 So. 3d 329 (Fla. 2d DCA 2010).

On January 31, 2011, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised two claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel ("Rule 3.850 motion") (Ex. 8).  On August 5, 2011, the post-conviction court entered an order denying in part, and striking in part, Petitioner's Rule 3.850 motion (Ex. 10).  Petitioner appealed, but on November 10, 2011, Florida's Second District Court of Appeal dismissed the appeal as untimely (Ex. 14); Tovar v. State, 75 So. 3d 1263 (Fla. 2d DCA 2011).  Petitioner received permission to file a belated appeal, and Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's denial of

Petitioner's Rule 3.850 motion (Ex. 21); <u>Tovar v. State</u>, 100 So. 3d 699 (Fla. 2d DCA 2012).

On August 26, 2011, Petitioner filed a petition alleging ineffective assistance of appellate counsel (Ex. 15). Florida's Second District Court of Appeal treated the pleading as a petition for a belated appeal, and it was denied on October 3, 2011 (Ex. 16). On October 27, 2011, Petitioner sought rehearing of the denial, but the motion was stricken as untimely (Ex. 17).

Petitioner filed the instant petition in this Court on January 9, 2013 (Doc. 1).

## II.  <u>Governing Legal Principles</u>

### A.   <u>The Antiterrorism Effective Death Penalty Act ("AEDPA")</u>

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

- 4 -

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a

specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (same).

**B.  Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u>  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.

Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.  A reasonable probability

is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In reviewing an ineffective assistance of appellate counsel claim, the standard of proof and standard of review are the same as in the context of ineffective assistance of trial counsel. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."), Appellate counsel's performance is prejudicial if "the neglected claim would have [had] a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (quotation omitted).

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)    there is an absence of available State corrective process; or
> > >
> > > (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).  Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in

federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual

innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A. **Claim One**

Petitioner asserts that counsel was ineffective for not objecting to his decision to enter a guilty plea (Doc. 1 at 4). Petitioner asserts that trial counsel "failed to adequately explain the law and failed to give competent advice on the benefits of accepting a plea bargain." Id. Petitioner admits that counsel advised Petitioner that the state had offered him a plea deal of thirty years in prison and twenty-five years of probation and explained to him that this "was the best deal he was going to receive from the state and that it was in his best interest to take it." (Doc. 2 at 2). However, Petitioner asserts that he "expressed in open court that he wanted a life sentence, because of an immense amount of guilt and a life sentence is what he deserved." (Doc. 1 at 4).[3] Petitioner claims that counsel should have objected to Petitioner's "insane plea" because "no competent counsel would allow for his client to plea to a plea offer beyond

---

[3] Although Petitioner did plead guilty to count one of the information in open court, he did not express his reasons for doing so at his plea colloquy (Ex. 10).

- 12 -

what he professionally feels is best for his client." (Doc. 1 at 4; Doc. 2 at 2).

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim:

> As to Ground 1 of his motion, Defendant asserts that his trial counsel provided ineffective assistance of counsel because he did not object to Defendant's decision to reject the State's plea offer and instead entered an open plea to the Court to one count of capital sexual battery. The decision to enter a plea of guilty is fundamental in nature, and can only be made by the defendant. Puglisi v. State, 56 So. 3d 787, 792 (Fla. 4th DCA 2010). The record clearly demonstrates that Defendant knew he had three options available to him: go to trial, accept the State's plea offer which included a lengthy prison sentence, or enter an open plea. Because the decision to enter the plea rested solely with Defendant, any objection by counsel would have been without merit. Therefore, Defendant has failed to demonstrate both prongs of the Strickland test.

(Ex. 10 at 2) (citations to the record omitted). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's dismissal of this claim (Ex. 21). A review of the record indicates that trial counsel's performance was not constitutionally deficient.

At the plea colloquy, defense counsel told the court that he had relayed a plea offer to Petitioner that required a lengthy prison term, followed by sex offender probation (Ex. 10 at 7). Petitioner rejected the plea offer and indicated to counsel that

he wished to plead guilty to one count of the information if the
State would drop the second count. Id.   Counsel told the court:

> I've gone over with Mr. Tovar his right to a
> trial to make sure that he understood that he
> had a right to a trial and to make the State
> prove that, by bringing in the witnesses,
> putting them on the stand, having the jury
> hear all that and any potential defense
> witnesses, including Mr. Tovar himself, and
> then making the decision.
>
> Mr. Tovar indicated to me, clearly, that he
> understood that and that he did not wish that.
> That he, actually, did wish to enter a plea at
> this point.  So based on that, at this time,
> Judge, per Mr. Tovar's wishes, the State is
> going to announce a nolle prosse as part of
> the plea on Count II.   And Mr. Tovar will
> plead no contest to Count I.

Id. at 7-8.  During the plea colloquy, the trial court advised
Petitioner that the plea he wished to enter involved a mandatory
life sentence and that the court could not impose a lesser
sentence. Id. at 9, 10.  The court advised Petitioner that if he
entered a guilty plea, he would give up the rights: to plead not
guilty; to a trial by jury; to see and hear witnesses testify for
and against him and to have his lawyer question them; and to
testify or not testify on his own behalf. Id. at 9-11.  Petitioner
affirmed that he understood. Id. at 11.  Petitioner stated that
no one had threatened or coerced him to enter his plea, and that
he was satisfied with the way counsel had handled his case. Id. at
13.

After the plea colloquy with the trial court, counsel asked
to put "a couple more things on the record":

> COUNSEL:      Mr. Tovar, I know you've
>               probably already gone over
>               this before, and already again
>               this morning, but did I not
>               convey a potential plea offer
>               to you this morning that did
>               not involve life in prison?
>
> PETITIONER:   Yes.
>
> COUNSEL:      Okay.  And it was you who came
>               back with the idea of pleading
>               to life in prison.  Is that
>               correct, sir?
>
> PETITIONER:   Yes.
>
> COUNSEL:      Okay.  I did not ever mention
>               the id – the concept of you
>               pleading out to a life charge.
>               Is that correct?
>
> PETITIONER:   No.
>
> COUNSEL:      All right.  And this is freely
>               your decision.  I have not
>               advised you to enter such a
>               plea.  Is that correct?
>
> PETITIONER:   Yes.
>
> COUNSEL:      Okay.  But you still wish to
>               go forward to enter the plea as
>               it is?
>
> PETITIONER:   Yes.

(Ex. 10 at 16-17).  Thereafter, the trial court concluded that
Petitioner's plea was made "freely and voluntarily." Id. at 27.
Petitioner was adjudicated guilty of count one and sentenced to

life in prison without parole. Id.   Count two was nolle prossed
by the State. Id. at 18.

      The United States Supreme Court has recognized that "the
accused has the ultimate authority to make certain fundamental
decisions regarding [his] case, as to whether to plead guilty,
waive a jury, testify in his or her own behalf, or take an
appeal[.]" Jones v. Barnes, 463 U.S. 745, 751 (1983); Brookhart v.
Janis, 384 U.S. 1, 6-7 (1966) (defense counsel lacks authority to
consent to a guilty plea on a client's behalf); Gonzalez v. United
States, 722 F.3d 118, 132 (2d Cir. 2013)("[C]ertainly the initial
choice of whether to plead guilty or to insist on a trial belongs
solely to the defendant."); Boyd v. Waymart, 579 F.3d 330, 351 (3d
Cir. 2009) ("It is well-established Supreme Court precedent that
an accused individual has the ultimate authority to decide whether
to plead guilty and whether or not to accept a plea offer extended
by the prosecution.").   Under this precedent, counsel had no
grounds on which to object to Petitioner's guilty plea.   Counsel
clearly expressed to the trial court and to Petitioner that there
was a plea offer on the table that involved less than a life
sentence.   Counsel also made clear that he did not advise
Petitioner to enter an open plea to the court.   Indeed, Petitioner
admits that counsel advised him to take the original offer from
the state (Doc. 2 at 2).   Counsel's performance was not deficient,

and Petitioner cannot satisfy the first prong of the <u>Strickland</u> analysis.

Moreover, although Petitioner argues that counsel "failed to adequately explain the law and failed to give competent advice on the benefits of accepting a plea bargain" (Doc. 1 at 4), he cannot demonstrate that he suffered prejudice from counsel's alleged failures. "Independent of the requirements for effective representation by a lawyer, the judge has a duty to ensure that the defendant's plea satisfies the mandate of due process and to intervene *sua sponte* by not accepting the plea if it does not satisfy that mandate." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1162 (11th Cir. 1991). The trial court thoroughly advised Petitioner of the rights he would forfeit by pleading guilty and explained in open court, three separate times, that Petitioner faced a mandatory life sentence if he pleaded guilty (Ex. 10 at 9, 10). Accordingly, Petitioner cannot show prejudice from counsel's alleged failure to adequately explain the law prior to entering a plea.

Claim One fails to satisfy either prong of <u>Strickland</u> and is denied pursuant to 28 U.S.C. § 2254(d).

### B.   Claim Two

Petitioner asserts that counsel was ineffective for failing to request a competency hearing prior to his plea colloquy (Doc. 1 at 4). Specifically, Petitioner states that he was "under duress, stress, trauma and feeling[s] of guilt" when he said that

he wanted a life sentence because he felt that was what he deserved. Id. Petitioner asserts that his statements were signs of incompetence that should have alerted counsel to the possibility that Petitioner did not understand the proceedings against him. Id. at 5. Petitioner asserts that, had he been competent, he would not have entered an open plea that involved a mandatory life sentence when he had already been offered a more favorable plea by the state (Doc. 2 at 5).

Petitioner raised this claim in his Rule 3.850 petition, and the post-conviction court denied it on the ground that the assertions were merely conclusory because "neither Defendant's [Rule 3.850] motion nor the plea colloquy provides any support for the contention that Defendant has ever suffered from a mental illness or defect which would have rendered him incompetent to proceed[.]" (Ex. 10 at 2). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's dismissal of this claim (Ex. 21).

A defendant is competent to stand trial if he possesses: (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; and (2) a rational and factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402 (1960); Fla. R. Crim. P. 3.211(a)(1). A guilty plea made while the defendant is mentally incompetent is constitutionally invalid, and the standard of competency for

pleading guilty is the same as the standard for standing trial. Godinez v. Moran, 509 U.S. 389, 396-97 (1993). "Due process requires that an adequate hearing be held on competency when the evidence raises a 'bona fide doubt' as to [a] defendant's competency to stand trial." Sheley v. Singletary, 955 F.2d 1434, 1438 (11th Cir. 1992); Pate v. Robinson, 383 U.S. 375, 385-86 (1966) (A trial judge must conduct a sua sponte sanity hearing only when the defendant's conduct and the evidence raises a "bona fide doubt" regarding the defendant's competence to stand trial.).

The record before this Court does not approach the threshold of showing a bona fide doubt about Petitioner's capacity to plead guilty. At the plea colloquy, Petitioner denied any history of mental illness or the use of drugs or alcohol that could affect his thought processes (Ex. 10 at 12). Petitioner affirmed his understanding of what he had discussed with counsel and of what the court discussed with him. Id. at 13, 14. Petitioner told the court that he did not need more time to consult with counsel and that he was satisfied with how counsel had handled his case. Id. at 13. Nothing in the record would have alerted the state court or counsel to the possibility that Petitioner did not possess a rational understanding of the proceedings against him. Based on the record before this Court, reasonable counsel could have decided against seeking a competency hearing prior to Petitioner's plea.

Moreover, under Strickland, even if trial counsel's failure to raise the issue of competence to the trial court was unreasonable, counsel's performance would only be constitutionally ineffective upon a showing of prejudice, which requires evidence that Petitioner was actually incompetent during the relevant time period. In Futch v. Dugger, 874 F.2d 1483 (11th Cir. 1989), the United States Court of Appeals for the Eleventh Circuit considered an ineffective assistance claim regarding trial counsel's failure to determine a defendant's competency to stand trial. The court stated, that "[i]n order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" Id. at 1487 (quoting Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir. 1988)).

In the instant petition, Petitioner alleges that, because the plea he entered was less favorable than one offered earlier by the state, he could not have been in "his right mind" when he pleaded guilty (Doc. 2 at 5).  This argument is unavailing.  A petitioner must "affirmatively prove prejudice." Strickland, 466 U.S. at 693. He cannot satisfy the second prong of Strickland with mere speculation and conjecture, Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992).  Petitioner's self-serving claim that he was incompetent to enter a guilty plea because he was overcome with

- 20 -

guilt or shame for the crimes of which he was accused is not proof that he did not understand the proceedings against him. Nor is it evidence that, even had counsel requested a competency hearing, that one would have been granted or that Petitioner would have been found incompetent to proceed.

This claim fails to satisfy either _Strickland_ prong and is denied pursuant to 28 U.S.C. § 2254(d).

### C.  Claim Three

Petitioner alleges that appellate counsel was ineffective for advising him that he did not need to send an application to proceed _in forma pauperis_ to the Second District Court of Appeal after he was granted a belated direct appeal (Doc. 1 at 5-6). Specifically, Petitioner asserts that appellate counsel represented him during his belated appeal hearing (Doc. 2 at 6). After Petitioner was granted a belated appeal, he "received an indigent packet ordering [him] to fill out and send to the circuit court." (Doc. 2 at 6). Petitioner asserts that appellate counsel advised Petitioner to "disregard the documents he received from the court and wait on a response [from] the Department of Corrections headquarters in Tallahassee." _Id._ Subsequently, Petitioner was advised by an inmate law clerk that he needed to return the forms, but "before [he] had a chance to send the indigent package, the Second District Court dismissed Petitioner's appeal for failure to submit the indigent package." _Id._

Petitioner raised this claim in his Rule 3.850 motion, and it was stricken as procedurally barred because "claims alleging ineffective assistance of appellate counsel shall be filed in the appellate court, in this case the Second District Court of Appeal, to which the appeal was or should have been taken." (Ex. 10 at 2-3).  Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's order striking this claim (Ex. 21).

Respondent asserts that this claim is unexhausted because Petitioner did not properly raise it as a claim of ineffective assistance of appellate counsel (Doc. 17 at 11-12).  Indeed, a petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).  The procedurally correct way for Petitioner to raise a claim of ineffective assistance of appellate counsel is by petition in the appropriate state appellate court. See Fla. R. App. R. 9.141(c)(2)(petitions "alleging ineffective assistance of appellate counsel shall be filed in the appellate court to which the appeal was or should have been taken").  In Florida, a District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990).  Because Petitioner

failed to properly raise a claim of ineffective assistance of appellate counsel in state proceedings, resulting in the application of a procedural bar by the state courts, the claim is likewise procedurally barred from review in this Court.

Petitioner does not assert that he properly exhausted this claim.  Instead, he argues that his procedural default of this ineffective assistance of appellate counsel claim is excused under the United States Supreme Court's ruling in Martinez v. Ryan, 132 S. Ct. 1309 (2012).  Petitioner's reliance on Martinez is misplaced.

In Martinez, the United States Supreme Court held that procedural default will not bar a federal habeas court from hearing substantial claims of ineffective assistance of counsel *at trial* if, in initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.[4]  Martinez' equitable rule applies solely to ineffective assistance of trial counsel claims and has not been interpreted to excuse the procedural default of all claims not properly raised in state court. Martinez, 132 S. Ct. at 1315.  The Supreme Court explained that "Coleman held that an attorney's negligence in a

---

[4] In 2013, the Supreme Court confirmed that the Martinez ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013).

postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." Id. at 1316. The Court continued:

> The rule of Coleman governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

Id. at 1320 (internal citations omitted). Under this reasoning, Martinez cannot apply to excuse Petitioner's failure to properly raise his claim of ineffective assistance of appellate counsel in state court.

Petitioner has failed to demonstrate cause for not raising this claim in the state courts or actual prejudice resulting from the error of which he complains. Nor does the actual innocence exception apply in this case. Claim Three is dismissed as unexhausted and procedurally barred.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  **Certificate of Appealability**[5]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[5] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   Claims One and Two of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Michael Tovar (Doc. 1) are **DENIED;** Claim Three is **DISMISSED** as unexhausted and procedurally barred.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___3rd___ day of June 3, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Michael Tovar
Counsel of Record